arguments not to exceed 15 minutes per side. Ms. Newbern for appellant. May it please the court. Excuse me. I'd like to reserve three minutes for rebuttal. Fine. I'm Alistair Newbern from the Vanderbilt Appellate Litigation Clinic. I'm court appointed counsel for appellant and cross-appellee Tina Wallace. This cross-appeal raises a number of issues. We submit that three points are critical to this court's decision. First, this court has of the issues raised by Ms. Wallace's appeal from FedEx's late-filed but consented-to post-judgment motion. That motion told the time for all parties to file notice of appeal until the district court finished its work and rendered a final judgment. That result is mandated by this court's decision in National Ecological Foundation v. Alexander, which remains good and binding law in this circuit. What about the ruling of the motions panel saying that it was untimely? Yes, Your Honor. Because this is a jurisdictional issue, this panel has the responsibility to revisit that question at any point during the litigation to assure itself both that it's not taking jurisdiction that the court doesn't rightfully have and also that it's not refusing jurisdiction that is proper. Here, the motions panel apparently overlooked the National Ecological Foundation decision and its binding effect. Is there a case that you would point us to that would say that if a panel in a case has said that they don't have jurisdiction, that there's a duty to re-examine that? Because I thought the cases went the other way, that if a panel says we have jurisdiction and there turned out to be wrong, that we have a continuing duty to dispose of the case on jurisdictional grounds. Yes, Your Honor. I believe it's a very old case. I believe it's Coens v. Virginia that says that the court has the same duty to monitor that it's not giving up jurisdiction improperly. Of course, the Supreme Court has recently reaffirmed in the Bowles v. Russell decision the court's ongoing duty to assess jurisdiction at any point during the litigation, including at this stage. We believe that because National Ecological Foundation is binding precedent and was not considered by the panel, that this panel does have that duty to revisit the decision. Second, the jury reasonably decided on substantial evidence presented at trial, every factual issue that's now raised to this court. For that reason, the magistrate judge's reduction of Ms. Wallace's recovery, contrary to that proof, should be reversed. First, the magistrate judge erred by substituting her own estimation of the damages for the jury's 31-month back pay award and remitted the jury's back pay award, which was submitted by testimony from Ms. Wallace and from both of her treating physicians, Kasser and Morgan. That error was compounded by the magistrate judge's forced remittiture without the offer of a new jury trial, which is per se reversible error. The magistrate judge further abused her discretion by denying liquidated damages against the Family Medical Leave Act's strong presumption that liquidated damages be awarded when FedEx did not show on the proof that it had a good faith basis for its actions and that it had a reasonable belief that its acts were not in violation of the FMLA. The proof showed quite the opposite, that FedEx in fact got legal advice as to what the FMLA required but then didn't follow that advice and didn't give Ms. Wallace the written notice of the medical certification requirements and the consequences of not meeting those requirements that the FMLA required. Finally, the magistrate judge abused her discretion in not submitting the question of front pay to the jury where the proof could have supported a front pay award. Third, none of the fact issues that FedEx raises in its cross appeal was undisputed at trial and each was resolved by the jury on competent proof. FedEx now asks this court to re-weigh that proof and find for it where the jury found for Ms. Wallace. The magistrate judge appropriately refused to take those fact questions from the jury and this court should affirm that decision. Returning to the jurisdictional question, there is a circuit split on this issue, but this court has taken a position on that circuit split with the unopposed post-judgment motion that is considered timely by the district court must also be considered timely under Appellate Rule 4. Nothing has invalidated that holding since National Ecological Foundation. The 2009 amendments to the rules simply harmonized the time deadlines in the Rules of Civil Procedure with the time deadlines under Appellate Rule 4 and were in fact protective of litigants by extending the period of time in which to file a Rule 60 motion that would toll the time to appeal for all parties. Yes, Rule 4 treats Rule 60 differently, but that's because Rule 60 is different. It doesn't have a set time prescription like the other post-judgment rules and it also generally a later filed Rule 60 motion will look at events that happen outside the litigation and that don't have the same triggering effect of needing an appeal of the entirety of the action. We believe that National Ecological Foundation's rule creates the better option in the circuit split by ensuring that when the parties agree that a district court should treat a post-judgment motion as timely and the district court hears that judgment on its merits, the final judgment rule should apply as it always does and no party should be expected to appeal until the district court has finished its work. Otherwise, piecemeal appeal would be the result and parties would have multiple notices of appeal coming out of a single action. Do you think that that is consistent with Bowles though? Yes, Your Honor. It's consistent with Bowles because of the definition that Bowles sets for what constitutes a jurisdictional rule and I believe that all of the circuits agree that the time prescriptions for post-judgment motions and the time prescriptions under Appellate Rule 4A4A do not meet Bowles' definition of a jurisdictional rule. That means that they can be waived by the parties and because they can be waived, traditional final judgment provisions should kick in at that point. With regard to the magistrate judge's limitations of Ms. Wallace's recovery, the magistrate judge's reduction of the jury's back pay award was remitted her in form, it was remitted her in substance, but it was forced remitted her without the offer of a new jury trial and for that reason alone it must be reversed. It was also remitted her where the jury's award of 31 months of back pay was supported by the proof at trial. Specifically, the jury heard testimony from Ms. Wallace that she believed she could work from the date of her termination through the date of trial, that she was actively applying for jobs throughout that period, 75 jobs in total. They heard testimony from her treating internist, Dr. Kasser, that she was certified to return to work without restriction after September 11, 2007. And most importantly, they heard testimony from Dr. Morgan himself that he did not form a specific opinion as to whether or not she could work, that the metric he used was artificial and arbitrary by his own words, like picking his stocks with a dart board, and that he believed that Ms. Wallace could be reasonably successful working in an environment that sounded a lot the legal department at FedEx, a smaller, closely supervised office with lots of peers. Based upon that testimony, the jury had a reasonable basis to find 31 months of back pay appropriate. Under the FMLA, liquidated damages are presumed appropriate unless the employer shows both that it acted in good faith and that it had a reasonable basis to Rusty Phillips, Ms. Wallace's direct supervisor, knew that he had special duties under the Family Medical Leave Act, knew that he needed to figure out what those were, got legal advice on what he should do, and then by his own testimony, again, did not read the advice he was given particularly carefully, did not fill out the forms that he was required to fill out, and did not meet the notice requirements even after ascertaining what they were. That's not reasonable. If we were to believe that we were bound by the prior panel's decision on the scope of the appeal, would we be able to get to the liquidated damages issue? No, Your Honor. I don't believe so because if you were bound by the prior panel's decision, that would hold that the only issue that could be considered would be those raised by FedEx's post-judgment motion, and that motion raised only the remittitor award as a... So in that motion, FedEx was seeking to have the remittitor? Yes, they were seeking remittitor, and so Ms. Wallace could raise her arguments in opposition. And would there be any way that the scope of that appeal, where you're challenging the remittitor, could involve all damages aspects of the litigation? It certainly does raise a lot of the same factual issues and the same questions. Specifically, it looks to the reasonableness of the jury's award and what the proof demonstrates in the case. As to FedEx's action, that's relevant both to the liquidated damages question and to the reduction of back pay under remittitor. If this court found that the issues it was determining under FedEx's post-judgment motion were relevant also to that consideration, it could expand the scope of the appeal, I would believe. Finally, there are a number of fact issues that are raised by FedEx in its cross-appeal. We believe that only one of those fact issues is properly preserved for this panel, which is whether Ms. Wallace was prejudiced by FedEx's violation of the Family and Medical Leave Act. We believe, again, that FedEx asks this court to re-weigh testimony that the jury heard and reasonably based its finding of prejudice upon, and that that's not appropriate for judgment as a matter of law. That evidence includes that Ms. Wallace had no notice of the consequences of failing to return medical certification under the FMLA. Second, that she would have returned medical certification had she known that that was required. That she did try to return that medical certification immediately when she realized that it was needed and that it had employment consequences for her. And most importantly, Rusty Phillips' testimony that she was terminated because she failed to return that medical certification, that that is what triggered FedEx considering her to be on their two-day, no-show, no-call policy and effectively absent without leave. Again, because the jury had a reasonable basis to reach its determination, we believe that judgment as a matter of law is not proper on that point. And finally, FedEx raises the question of whether the regulations defining the written notice procedures are arbitrary and capricious rulemaking. We simply believe that there's no support for that argument. This was a definition of a time period that's vague in the statute, made through an adequate rulemaking procedure, including notice and comment, and for that reason, it's appropriate and should not be found invalid. Thank you. Thank you. Good afternoon. May it please the Court. My name is Kim Honges and I represent FedEx Corporation in this matter. This Court should reverse the District Court's order denying FedEx's motion for a judgment as a matter of law because Ms. Wallace failed to provide any evidence upon which a reasonable juror could conclude that she suffered prejudice as a result of FedEx's actions. However, if the Court does not reverse the District Court's order denying FedEx's motion for judgment as a matter of law, it should affirm the District Court's order reducing the jury verdict to $90,788 as a matter of law and affirm the District Court's order to allow Ms. Wallace to reopen, excuse me, and refuse to allow Ms. Wallace to reopen her appeal as to liquidated damages and front pay. In order to survive a motion for summary judgment as a matter of law on an FMLA, excuse me, a motion for a judgment as a matter of law on an FMLA interference claim, Ms. Wallace had to produce evidence sufficient to allow a reasonable juror to conclude that she had suffered prejudice as a result of FedEx's actions. The action that she claims interfered with her FMLA rights, in other words, the one that she has to show caused her prejudice in this case, was FedEx's failure to complete the FMLA paperwork that it gave her. In particular, the portions of the form that relate to the requirement of providing a medical certification and the consequences for failure to do so. Magistrate Judge Vescovo denied FedEx's motion for a judgment as a matter of law because she erroneously relied on Ms. Wallace's testimony that she would have returned the medical certification within 15 days if she had been told that she would be fired if she didn't. FedEx could not notify Ms. Wallace that she would be terminated for a failure to return a medical certification within 15 days because that's simply not true. The consequence of a failure to return the medical certification is not termination, never was termination. The consequence of a failure to return the medical certification is only that those days might not be counted as FMLA leave. Ms. Wallace was terminated not because she didn't return a medical certification and not even because of her attendance. She was terminated because for two consecutive days she failed to appear for work and failed to call to let FedEx know why she wasn't coming in. That triggered FedEx's no-call, no-show policy and subjected her to termination. The reason this gets confusing is because the time periods are so similar. Suppose, for example, that Ms. Wallace had been out on an approved seven-day leave rather than the 14-day leave that we're talking about. If she'd been out for seven days, then on day eight and day nine when she didn't show up for work and she didn't call in, it's a lot clearer that what's going on here is she's being terminated for a failure to show up. That's the same thing that's happening in this case except that the difference is that Ms. Wallace had a medical excuse for 14 days and an approved leave for 14 days and then on day 15 and on day 16 she didn't call in to work and she didn't show up. She simply failed completely to let FedEx know what she was doing. Dr. Kastner noted, I believe, that Ms. Wallace would need to be reassessed at the end of this, I guess, two-week period. That's correct, sir.  Sure, that's correct. There seemed to be some indication that at the end of the period there would have to be a medical assessment in terms of her ability to return to work. That's correct, your honor. The doctor's note that Ms. Wallace provided her supervisor before she went out on her 14-day leave said that two-week leave was required but that at the end of that period she would need to be reassessed. Ms. Wallace's own trial testimony is that she was reassessed and that she received a note from Dr. Kastner extending the leave beyond the two weeks. However, she testified at trial that she never provided that information to FedEx and that FedEx had absolutely no reason to know that the leave had been extended. The district court erred here because it ignored those facts as well as some additional facts from Ms. Wallace's own testimony at trial. All of this can be found in Record 81 from Ms. Wallace's own trial testimony that she only informed FedEx that she would be out for 14 days, that she testified unequivocally that she did not provide FedEx with any notice of an extension, that she agreed to keep Mr. Phillips, her supervisor, informed of her medical condition, that she was provided FMLA paperwork and knew that she had to return the medical certification within 15 days, that she immediately took the medical certification to her physician and received the medical certification but never provided it to FedEx, that she never contacted FedEx and never responded to Mr. Phillips' many attempts to contact her during or after the 14-day leave, and that she knew she would have no reason to know that FedEx would have no reason to know that her leave had been extended, and most importantly, that the reason she didn't tell FedEx she was taking additional leave wasn't because she didn't know she had to return a medical certification. It was because of her state of mind, her emotional state, and she just felt like a failure. That's why she didn't notify FedEx. The bottom line is, on day 15 and day 16, so that's after her 14-day leave has expired, on those two days, FedEx had absolutely no idea what Ms. Wallace's intentions were. She had just flatly refused to inform us and flatly failed to respond to Rusty Phillips' many attempts to contact her. However, the district court also ignored one other critical piece of testimony in denying FedEx's motion for judgment as a matter of law. Rusty Phillips, at record 54, page 2232 through 33, Rusty Phillips testified that if Ms. Wallace had returned on August the 31st, she would not have been terminated. Here's why that's important. The 14-day leave ended on August the 29th. On August the 30th, that's day 15, Mr. Phillips expected that Ms. Wallace would return to work. She didn't call. She didn't appear. That's also day 15, is the end of the 15-day period for her to return her medical certification. On August the 31st, day 16, that's Ms. Wallace's second day that she failed to call in and failed to appear at work. Mr. Phillips, among his many other communications, emailed Ms. Wallace on August the 31st, day 16, asking her to let him know what her intentions are, referring her to the no-call, no-show policy, and communicating that he didn't know what she planned to do. That can be found in Ms. Wallace's appendix, Exhibit 25. If FedEx had intended to terminate Ms. Wallace for a failure to return a medical certification within 15 days, there was absolutely no reason for Mr. Phillips to have contacted her on day 16, August 31st. FedEx would have had what it needed to terminate her, if that was the intention, at the end of day 15, on August the 30th. But on day 16, we see Mr. Phillips attempting to contact her and still telling her, I don't know what your intentions are. Please make sure, let me refer you to the corporate policy on a failure to keep your employer advised. And that's what he's talking about. He's referring to FedEx's no-call, no-show policy. All of this testimony was ignored by the district court in making its orders. Judge Vescovo, on page 9 of her order, relied only on Ms. Wallace's testimony that if she had known she would be fired for not returning a medical certification, then she would have done it. And again, that's a communication FedEx could not have given her because it simply isn't true. At the end of the day, whether that paperwork was complete or not, Ms. Wallace knew she had to return a medical certification within 15 days. Whether that paperwork was complete or not, Ms. Wallace knew FedEx had absolutely no reason to know that she would be gone more than 14 days. And whether that paperwork was complete or not, Ms. Wallace refused to contact FedEx or to respond to Mr. Phillips' attempts to contact her, not because she didn't know she needed to, but because she felt like a failure and because she didn't want to talk to anyone. That all comes, again, from Ms. Wallace's own trial testimony. These are not disputed facts. Magistrate Vescovo heard all of this testimony and construing all of it in her favor, the only reasonable conclusion is that Ms. Wallace was not prejudiced by any failure on the part of FedEx to complete the paperwork, but by her own failure to contact FedEx to let FedEx know what her intentions were. Therefore, judgment as a matter of law should have been granted and this court should reverse the district court's order. However, if the court does not reverse the district court's order, it should affirm the order reducing the damage award as a matter of law. Was that a remitter? No, Your Honor. It was a reduction as a matter of law. There is, admittedly, there is some confusing language in the order, but the important part of the order is found where Judge Vescovo actually makes her order and she says, and I'm quoting from page 14 of her order, a reasonable jury could award back pay from the date of termination on September 5, 2007, through law is granted, the court orders the award of back pay reduced to $90,788. How does that differ from what is known as a remitter? Your Honor, under a remitter, Ms. Wallace is correct that the court is required to allow the option of a new trial if it's granted as a remitter. If it's granted, however, a district court may, if compelled by legal rule, grant a reduction in the damages as a matter of law, and that's what the court did here. However, even if this court finds that the language is confusing or that the district court had intended to grant a remitter, it's still a harmless error because FedEx was entitled to a reduction in the damages as a matter of law. Here's what the jury heard, and it gets, I'll respect due to Ms. Wallace, it gets very confusing in the briefing, so I want to make it a little bit clearer. The jury heard from Dr. Kasser and from Ms. Wallace that... Let me stop you before you get into that. Sure. Aren't we required to look at the evidence in the light most favorable to Ms. Wallace with regard to the testimony to support the back pay? Isn't that the test? If we're talking about a judgment as a matter of law, yes, Your Honor, and however, this will come from Ms. Wallace's own testimony and proof. Okay, but wasn't there some evidence to support that back pay amount that was reduced by $90,000 or so? Respectfully, Your Honor, I don't agree that there is, and I think that's where it gets confusing in the briefing because the testimony appears in the briefing, in Ms. Wallace's relay of the dates, and it's just not true. What the testimony at trial was from both Dr. Kasser and Ms. Wallace was that as of September 2007, she believed she could go back to work. From Dr. Wallace, her treating psychiatrist, and Ms. Wallace herself, excuse me, Dr. Morgan, and Ms. Wallace herself, both testified that as of January 2009, she could not work. However, as of the date of trial in March of 2010, Ms. Wallace testified that she believed at that point she could go back to work. We're talking about back pay, so we're looking at the date of trial backwards. There's nothing that says that from January 2009 through the date of trial that she could work. So what the district court did here properly was look at, based on the law of back pay that says you can't recover for time periods when you cannot work, the district court looked at the time period where she could work, September 2007 through January 2009, and said that's what you can recover for. Even she says as of January 2009 that she couldn't work, and there's nothing between that period of time and the date of trial to change that fact. So the district court looked at those facts correctly, and correctly reduced the damages as a matter of law. However, even if this court does find that the damages were improperly remitted rather than reduced as a matter of law, for those same reasons, it's a harmless error because FedEx was entitled to a reduction as a matter of law. The law of back pay... Because damage award is sought to be reduced, has the choice of whether to go back and have a new trial on damages. And so you're really short-circuiting that and saying that it should be decided as a matter of law. Correct Your Honor, and the district court is within its authority to do so if it's compelled by legal rule. And here, because of the law of back pay, because there was clear testimony according to the district court that there was a large chunk of time, January 2009 through trial, when she was unable to work, the court was compelled by the law of back pay damages to pull that award out of the total and only award her back pay damages for the time period in which she could work. If this court allows Ms. Wallace to reopen her appeal, however, as to liquidated damages in front pay, first of all, we don't even reach this issue if the court finds that the district court improperly denied FedEx's motion for judgment as a matter of law. And we don't even reach this issue if the court finds that it's unnecessary for it to... or that it's unable to overturn what the motions panel has done. What about this prior precedent that existed in the National Ecological Foundation case? Your Honor, the National Ecological Foundation case was decided before the 2009 amendments to the rules... I'm sorry, I see I'm out of time. I'll continue. Was decided before the 2009 amendments to the federal rules of civil and appellate procedure. The Seventh and Third Circuits, since that time, have looked at the Alexander case and have found that it's inconsistent with the changes that were made. Would you explain how it is inconsistent? Yes, Your Honor. Because of the clear preference expressed in the advisory committee comments that the deadlines be consistent, the Seventh and Third Circuits found that the changes that allowing the time tolling would cause an inconsistent result in the district court. In other words, the advisory committee notes express a clear preference for all of the deadlines for post-trial motions to be the same. And then the court of appeals need only look to whether the notice of appeal was filed  or not. However, under the Alexander rule, given that preference, the appellate court then has to look to see whether there was tolling or not tolling. And that's going to depend upon the individual circumstances of the litigation and, in many cases, the quality of the representation of the individual parties. Now, you asked for an extension of time to file the Rule 50B and 59E. Correct, Your Honor. Even though the rules prohibit you from getting an extension? Correct, Your Honor. So why should you benefit from your clear error? There is no dispute here that we can all appeal from the order from that late-filed motion. We're all on the same footing in terms of that order. The question is whether Ms. Wallace can reach back from that order. Right, I understand that. But in effect, what you're doing is you're saying that if—I'm not saying that you were a crafty lawyer—but if someone were a crafty lawyer and asked for an extension, even knowing that an extension was flatly forbidden by the rules, and got an extension, they could—and the opponent was trying to be nice and not objecting—the having the ability to litigate the Rule 50B, 59E motion, and perhaps win on that, but at least defeat any appeal by the opposing side. No, Your Honor, because respectfully— Except for on that motion. Right, well, not necessarily, because Ms. Wallace could have certainly filed her notice of appeal within 30 days of the order denying her post-trial motion, and still would have been timely. The question here is whether the late filing of FedEx's motion told her time to do that, and that's what's at issue in the National Ecological Foundation case and also the Seventh and Third Circuit cases, Lizardo and Blue. So we're on equal footing when it comes to the order out of the late-filed motion, because everybody can appeal from that to the same extent. Ms. Wallace would not have been prejudiced had she filed her notice of appeal within the appropriate time period from the order denying her motion for a new trial. Thank you. A few points in response, Your Honor. First, this is exactly why the Family Medical Leave Act has a written notice requirement and requires an employer to set out in writing when a medical certification is required and what the consequences are of not returning that medical certification. Your opponent, though, has gone through a lot of evidence and says that there wasn't any reliance on this, that it is of no consequence. What would your direct response to that be? Your Honor, that FedEx cuts too thin in that argument. The two-day no-show, no-call policy is simply not triggered unless Ms. Wallace was not on Family Medical Leave Act leave, and she had every right to believe that she was on FMLA leave. She was given FMLA paperwork by FedEx, and in fact, the only written notice that she was given was FedEx's own memo saying that she could take medical leave until such time as she felt ready to return to her job responsibilities. That's the written notice that she was given. She was never told that there was a 14-day rule in place, and she was never told that if she didn't return the medical certification that she would not be considered on FMLA leave and that another deadline would terminate. She took this leave also on the background of not having had to return medical certification in the past, which just further confuses the issue, points to why this kind of certification is required, written notice is required. With regard to the prejudice issue, Rusty Phillips testified at trial, quote, on page PID 2216, she was fired because she did not return the paperwork. She was fired because she did not return the medical certification and because FedEx then apparently did not consider her on FMLA leave. His many attempts to contact Ms. Wallace, as FedEx turns it, were not reasonable. These were calls to a busy line where no message was left. These were two emails sent to a home email account that he knew was not being read. And most specifically, this was all too late. This was all after the fact attempts to cure the failure of FMLA written notice that was required. Ms. Wallace's actions were reasonable based upon what she was told by her employer about the length of her leave and her prior experience taking medical leave from FedEx. With regard to whether Ms. Wallace could work in January 2009, she testified at trial that she did believe that she could work in January of 2009, that her prior deposition testimony had perhaps been parsing a bit too thin, saying that she did not know if she could have worked on a specific day in 2009 because she might have had a cold or some other thing that would have kept her from work. But she affirmatively testified at trial that she believed she could have worked in 2009. Dr. Kasser supported that testimony. And again, Dr. Morgan discounted his own testimony by saying that he had not formed a direct opinion and that his own metric was arbitrary and artificial. Thank you. Thank you both for your argument. The case will be submitted. Would the clerk call the next case please?